# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 519 | **DATE** | 7/30/2010 |
| **CASE TITLE** | Naham vs. Haljean et al | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this minute order, Plaintiff's motion seeking to bar John Walliser from being deposed or from testifying at trial, and also to seal any written or recorded statements by Walliser related to this case [72] is denied, and Plaintiff's motion for a protective order [76] is also denied.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

    This matter is before the Court on two motions filed by Plaintiff Gary Naham ("Plaintiff" or "Naham"). On July 9, 2010, Plaintiff filed a motion seeking to bar John Walliser ("Walliser") from being deposed or from testifying at trial, and also to seal any written or recorded statements by Walliser related to this case [72]. On July 26, 2010, Plaintiff filed a motion for a protective order [76], supplementing his motion dated July 9, 2010. For the following reasons, Plaintiff's motions are denied.

    At some point, Plaintiff hired Walliser as his paralegal to assist him in this case. After some period of time, Walliser stopped working as a paralegal for Plaintiff. Plaintiff now seeks to bar Walliser from being deposed by Defendants and from testifying at trial. Plaintiff raises three primary reasons to support his argument, each of which is addressed below.

*(1) Harassment / Intimidation and Issues of Credibility*

Plaintiff states the following:

Walliser's participation is itself an attempt to harass, intimidate and oppress me and should be barred . . . . Walliser is being deposed despite having no direct knowledge of the events involved in [the instant case]. Walliser has no credibility in front of a Jury. Walliser facing possible criminal charges relating to his unemployment filings and disclosures in the fall, and is suing the State for 30,000 of additional undeserved benefits. Walliser has with the utmost motivation to lie in order to damage my credibility and neutralize my potential testimony against him.

> Walliser's deposition can and will cause me additional emotional harm, and is designed to do so.

(Dkt. No. 76 at 1).

With respect to the contention that Walliser's participation is an attempt to harass, intimidate and/or oppress Plaintiff, the record does not support this assertion. It is clear that the relationship between Plaintiff and Walliser is contentious, but there has been no showing that anyone (Walliser, Defendants or defense counsel) is seeking Walliser's deposition for any purpose other than to obtain potentially relevant information.

With respect to Plaintiff's assertion that Walliser has no direct knowledge of the events in the instant case, we look to the rules governing the scope of discovery. Generally speaking, the scope of discovery is intended to be very broad. "Parties may obtain discovery regarding *any* nonprivileged matter that is *relevant* to any party's claim or defense . . . . Relevant information *need not be admissible* at the trial if the discovery appears *reasonably calculated to lead to the discovery of admissible evidence*." Fed. R. Civ. P. 26(b)(1) (emphasis added). It is possible that Walliser would be unable to provide any information relevant to this case, and/or that the information in Walliser's deposition would be inadmissible at trial. However, the only way to determine whether Walliser has any relevant and/or admissible information is to allow the parties to take his deposition. Whether such testimony would ultimately be admissible at trial and/or whether it would be subject to sealing are questions to be answered after the deposition reveals what the content of such testimony would be.

With respect to Plaintiff's argument that Walliser has no credibility and has motivation to lie, the issue of witness credibility is not determined at this stage of litigation, but rather is reserved for the finder-of-fact to determine at trial. If a deposition revealed that Walliser has relevant information, and that information was found to be admissible at trial, Plaintiff would be free to raise questions about Walliser's credibility and questionable motivation at that time, and allow the finder-of-fact to make that decision.

With respect to Plaintiff's contention that Walliser's deposition can and will cause him additional emotional harm, such general and vague assertions are insufficient to block the discovery of potentially relevant information.

*(2) Privilege Involving Paralegals*

Plaintiff seems to argue that some sort of privilege exists, stating, "As my court acknowledged para legal, I enjoy the same confidentiality as I would were Walliser employed by my attorney, Rather myself as a pro-se litigant. My pro-se status does not nullify, but instead makes this protection even more critical a necessity for my ability to pursue this case."

We start with the basic definition and purpose of the attorney-client privilege. "The attorney-client privilege protects communications made in confidence by a client to his attorney in the attorney's professional capacity for the purpose of obtaining legal advice." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) (citing *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)). "Because the privilege is in derogation of the search for the truth, it is construed narrowly." *Id*.

# STATEMENT

In asserting that Plaintiff's relationship with his paralegal is entitled to the same type of privilege that an attorney enjoys, it is unclear whether Plaintiff is arguing that the *paralegal* is like the attorney, or Plaintiff *himself* is like the attorney.

If Plaintiff is arguing that a privilege exists insofar as his paralegal acted as his attorney, this argument is without merit. A paralegal is not an attorney, and communications with a paralegal are not entitled to any more protection than communications with any other non-attorney.

If Plaintiff is arguing that a privilege exists because Plaintiff is acting as his own attorney, and conversations between attorneys and paralegals are privileged, this argument is also without merit. It is true that a privilege often applies in the context of an attorney's communication with a paralegal or other agents, but that is because that agent is present "to assist the attorney in rendering legal services." *Jenkins*, 487 F.3d at 491. In other words, if an attorney-client relationship exists, the privileged nature of those communications will not necessarily be destroyed by the insertion of a third party, such as a paralegal. But the basis of that privilege is still centered around the existence of an attorney-client relationship into which the paralegal is joined. Plaintiff is representing himself, and in that way is somewhat like both an attorney and a client. However, Plaintiff is one person, and cannot by himself establish the existence of an attorney-client relationship. Since no attorney-client privilege exists, there is no privilege to extend to the paralegal.

*(3) Non-Disclosure / Confidentiality Agreement*

Plaintiff stated, "Walliser, like ALL people I interview for potential employment, signed a non-disclosure/confidentiality agreement." (Dkt. No. 76 at 1).

We first note that the "Confidential Disclosure Agreement" attached to Plaintiff's submission is an incomplete, unsigned and undated document, and Wallier's name does not appear anywhere in the document. This document does not clearly demonstrate that any agreement existed between the parties.

Additionally, even if an agreement existed between the parties, the Court is not convinced that such an agreement would override the "fundamental principle" in our legal system that "the public . . . has a right to every man's evidence." *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)). If litigants were able to prevent disclosure of relevant information by way of entering into confidentiality agreements with the people to whom the information was revealed, "our system of discovery would become nothing but a sham." *Medical Waste Technologies L.L.C. v. Alexian Bros. Medical Center, Inc.*, 1998 WL 387706 at *6 (N.D. Ill. 1998). "When balanced against the need for discovery in litigation, confidentiality agreements cannot preclude otherwise permissible discovery." *Sparks v. Seltzer*, 2006 WL 2358157 at *4 (E.D.N.Y. 2006). Testimonial exclusionary rules and privileges "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel*, 445 U.S. at 50 (internal citations omitted).

In summary, there has been no showing that the parties entered into a confidentiality agreement, and even assuming such an agreement existed, there is no showing that the need to prevent Walliser's deposition outweighs the need for allowing discovery of potentially probative evidence.

## STATEMENT

For the foregoing reasons, Plaintiff's motion seeking to bar Walliser from being deposed or from testifying at trial, and also to seal any written or recorded statements by Walliser related to this case [72] is denied, and Plaintiff's motion for a protective order [76] is also denied. The defendants are permitted to take the deposition of Walliser, and the admissibility of Walliser's testimony at trial will be addressed as a separate issue at a later date.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge