# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GARY NAHAM, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| Chicago Police Officers RICHARD HALJEAN, Star No. 9860, N. SPENCER, Star No. 14835, VASAVID, Star No. 19359, WALSH, Star No. 11214, MEINDL, Star No. 10982, CWICK, Star No. 11860, GUTIERREZ, Star No. 1473, STASCH, Star No. 187, and the CITY OF CHICAGO | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

No. 08 C 519

Judge John J. Tharp, Jr.

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary Naham brought this action against seven individual Chicago Police Department officers and the City of Chicago, alleging civil rights violations under 42 U.S.C. § 1983 and malicious prosecution under Illinois law based on events relating to the execution of a search warrant. The defendant has moved for partial summary judgment on four of the seven counts of the complaint, alleging Due Process violations (Count II), conspiracy (Count III), false arrest (Count IV), and unlawful search (Count V). For reasons that follow, the motion is granted.

# BACKGROUND[1]

On January 24, 2006, Defendant Chicago Police Officer Richard Haljean submitted an application for a search warrant to search the home of Gary Naham. The affidavit alleged facts suggesting there was probable cause to search Naham's home for evidence of methamphetamine distribution. After a judge issued the search warrant, a search team led by Robert Stasch and consisting of Adnardo Gutierrez, Thomas Walsh, James Vasavid, John Meindl, James Cwick, Donald Szczesny, Richard Haljean, and Nick Spencer executed the search on Naham's home. After claiming to recover marijuana, methamphetamine, a cannabis grinder, and some cash in the search, the officers arrested Naham, who was then charged with possession of a controlled substance and possession of marijuana. The State eventually dismissed the charges against Naham *nolle prosequi*, and Naham filed this lawsuit.[2]

Naham alleges that he was targeted by the police officers in a broad conspiracy to retaliate for another incident nine days earlier, on January 15, 2006. Naham alleges that Szczesny had entered Naham's home without a warrant, and that Naham responded by locking Szczesny

---

[1] Summary judgment is appropriate if the movant shows that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56. For the purposes of this motion, all facts and inferences are drawn in favor of Naham, the non-moving party. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014); *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). Naham did not comply with Local Rule 56.1(b)(3)'s requirements that a response to the moving party's statement of facts must contain individual numbered paragraphs corresponding with the numbered paragraphs in the moving party's statement or must contain references to the affidavits or parts of the record relied upon. Although it is squarely within the Court's discretion to deem the entirety of the defendants' statement of facts admitted, *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004), in light of Naham's pro se status, the Court declines to do so for this motion.

[2] Although he is presently proceeding *pro se*, Naham was represented by retained counsel when he filed his complaint. Dkt. 3. Citing irreconcilable differences, his original counsel withdrew approximately six months later. Dkt. 23. Thereafter, the Court appointed counsel to represent Naham on three different occasions; all of those attorneys also withdrew citing irreconcilable differences. *See* Dkt. 94, 100, 102, 118, 144, 145, 184. Although the Court expressly permitted Naham a further request for counsel, Dkt. 184, Naham did not make one and responded to the defendants' summary judgment without the assistance of counsel.

on the balcony and calling 911. Naham alleges that after that incident, the officers obtained the search warrant at issue in this case using knowingly false information in the affidavit. Naham also alleges that the officers used excessive force in executing the warrant in a no-knock raid, sexually assaulted him, unreasonably and unnecessarily destroyed his property, and planted false incriminating evidence. Further, Naham alleges that during the pendency of the criminal proceedings, the officers continued to withhold exculpatory evidence. Finally, Naham alleges that the City of Chicago maintained a widespread custom and practice, as described in *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), of covering up police officer misconduct.

In December 2008, Judge Andersen granted the defendants' motion to bifurcate the case, and stayed litigation of the *Monell* claim (Count VI) until after the other claims are resolved. *See* Minute Order, Dkt. 48. After discovery closed, the defendants moved for summary judgment on Naham's claims alleging due process violations (Count II), conspiracy to deprive due process rights (Count III), false arrest (Count IV), and unlawful search (Count V). The defendants' motion does not seek summary judgment on Naham's excessive force and failure to protect claim (Count I) or malicious prosecution claim (Count VII).

**DISCUSSION**

The Court will address the arguments for partial summary judgment based on the chronology of the applicable facts rather than their numerical sequence in the complaint.

**I.      Fourth Amendment Search (Count V)**

Naham alleges that defendant Richard Haljean knowingly used false statements to obtain a search warrant for Naham's home. Specifically, Naham alleges that Haljean misused an existing template Complaint for Search Warrant and filled in false statements about a confidential informant's description of drug sales out of Naham's home and false statements

3

about Haljean's personal observations of suspicious activity. Naham disputes that a confidential informant exists at all, and alleges that Haljean simply fabricated the entire story.

Naham offers no direct evidence that the informant does not exist. In support of his allegations, Naham highlights the near-identical "template" language used by Haljean in over a dozen other search warrant affidavits. *See* Pl.'s Resp., Dkt. 203, at 45–101.[3] Naham also points to perceived inconsistencies between Haljean's original affidavit used to secure the search warrant and his affidavit prepared for his defense in this case. Further, Naham notes that Haljean's original affidavit alleges suspicious foot traffic to and from Naham's home, which Naham contends is impossible to observe from the street, because an observer would be unable to tell which of the 30 apartment units any given person is going to or coming from. Naham argues that he was targeted with a search warrant and raid because of an altercation that had occurred with defendant Donald Szczesny a week earlier, and that access records show that Haljean's supervisor Robert Stasch had viewed Naham's criminal history file on January 15, 2006, over a week before Haljean claims he became aware of Naham's file.

When an affiant seeking a search warrant knowingly and intentionally (or with reckless disregard for the truth) makes a false statement that is necessary to the finding of probable cause, the warrant must be voided, and the resulting search must be treated as if no warrant had issued at all. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). "There is . . . a presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. To overcome this presumption and avoid summary judgment in a § 1983 case, a plaintiff first "must provide evidence that the officers knowingly or intentionally or with a reckless disregard for the truth,

---

[3] Naham submitted a 102-page document in opposition to the Defendants' Motion for Partial Summary Judgment as a single docket entry. *See* Dkt. 203. Although different portions of this document are paginated individually, for clarity this Memorandum Opinion cites to the page number of the entire docket entry, as labeled by the Court's automated case management system.

made false statements to the judicial officer." *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968, 971 (7th Cir. 2003) (internal quotation marks omitted); *see also Parkey v. Sample*, 623 F.3d 1163, 1165 (7th Cir. 2010) (holding that when a plaintiff alleges police deception in a warrant application, the defendant officers "need only show an absence of evidence to support [the plaintiff's] claims" to succeed in a motion for summary judgment). Second, the plaintiff must show that "the false statements were necessary to the judicial officers' determinations that probable cause existed." *Molina*, 325 F.3d at 968.

Naham has failed both prongs of this test, and the minor deficiencies that Naham perceives in Haljean's 2006 affidavit are not sufficient to overcome its "presumption of validity." *Franks*, 438 U.S. at 171. Haljean's 2006 affidavit is not actually inconsistent with his later 2013 affidavit. *See* Pl.'s Resp., Dkt. 203, at 46–47; Haljean Aff., Dkt. 195-B, at 1–4. In the 2006 affidavit, Haljean reported that he had a conversation with the confidential informant on January 24, but did not mention any earlier contact with the informant. In the later 2013 affidavit, Haljean reported that he had conversations with the informant on both January 23 and January 24. Because the earlier affidavit did not represent that the January 24 conversation was the only conversation between Haljean and the informant, the later affidavit provides additional context and not a contradiction. Similarly, Naham insists that the 2006 affidavit falsely represents that Haljean retrieved Naham's criminal history file on January 24. According to Naham, the affidavit is a chronological narrative that Haljean's criminal history check—which is mentioned last in the affidavit—occurred last in time, after other events that occurred on January 24. Because Haljean's 2013 affidavit and the database access records show that Haljean had actually retrieved Naham's record on January 23, Naham argues that the earlier affidavit must be false. However, the 2006 affidavit does not state the time or date when Haljean checked for Naham's

criminal history record, and Naham provides no reason to assume, by implication, that the affidavit makes any assertion at all about the date of the criminal history check, much less an implied assertion that is contradicted by other evidence.

At most, Naham has identified a few minor omissions from the 2006 affidavit, but immaterial omissions are not enough to invalidate a warrant. *See Molina*, 325 F.3d at 968 (requiring affidavit omissions to be material to invalidate an otherwise legitimate warrant). Adding that Haljean had conversations with the confidential informant both before and after the alleged drug buy would actually bolster—not weaken—the finding of probable cause in some ways, such as by establishing rapport between Haljean and the informant. And even if Naham had identified a contradiction between the 2006 affidavit and database records of the background check, the timing of the background check would not have materially changed the probable cause analysis anyway. *See, e.g.*, *Forman v. Richmond Police Dept.*, 104 F.3d 950, 964 (7th Cir. 1997) (holding that an officer's inconsistency as to whether a document was an original or a photocopy was immaterial to the validity of a search warrant). Because these insignificant omissions are not material, they fall far short of the "reckless disregard for the truth" standard outlined in *Franks* and its progeny. 438 U.S. at 155.

Similarly, Naham has not shown that Haljean submitted false statements regarding his observation of traffic to and from Naham's apartment building. The 2006 affidavit gives a physical description of the "multi-unit apartment building" and describes "numerous subjects coming and going from the apartment building." On its face, the affidavit acknowledges its own lack of precision, and does not purport to isolate the traffic to Naham's particular unit. Therefore, Naham has not identified a falsehood in the affidavit. Nor has he identified how the inconsequential fact that the apartment building had multiple units defeats probable cause,

especially when the affidavit contained other evidence specific to Naham and his particular apartment. *See, e.g.*, *Parkey v. Sample*, 623 F.3d 1163, 1166 (7th Cir. 2010) (holding that incriminating trash near a residence, when combined with a DEA tip specific to a particular home and a criminal history check specific to a particular resident, is sufficient to support a magistrate's finding of probable cause in issuing a search warrant for that particular home).

Naham has failed to present evidence that Haljean submitted any false statements, that the false statements were submitted with at least a reckless disregard for the truth, or that any falsehoods had materially affected the magistrate's probable cause determination. As a result, the Court concludes that the search warrant authorizing the January 24, 2006 search of Naham's home was valid, and the defendant officers are entitled to summary judgment on Naham's unlawful search claim in Count V.

## II. Fourth Amendment False Arrest Claim (Count IV)

Naham also contends that the defendant police officers wrongfully seized him, in violation of his Fourth Amendment rights, when they arrested him on the evening of January 24, 2006. Naham maintains that all of the incriminating items found on that evening were the fruits of an illegal search, that any methamphetamine allegedly recovered was planted by the police officers, and that the quantity of marijuana recovered would not justify an arrest. As discussed above, the officers executed the search pursuant to a valid search warrant, *see supra* Part I, so the arrest is not the result of any illegal search.

Naham's admission that he had marijuana in his home at the time of the search defeats his false arrest claim. "Where a police officer 'has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.'" *Ray v. City of Chicago*, 629 F.3d 660, 663 (7th Cir. 2011) (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). Marijuana possession is

a crime under both Illinois and federal law. *See* 21 U.S.C. § 844(a) (defining the knowing possession of controlled substances as a misdemeanor); 720 ILCS 550/4 (defining the knowing possession of marijuana as a misdemeanor or felony depending on the quantity possessed). Therefore, an officer who has probable cause to believe that a suspect possesses even small quantities of marijuana may arrest the suspect without violating the Fourth Amendment. Naham has admitted to possessing marijuana by failing to deny this particular fact. *See* Fed. R. Civ. P. 56(e)(2) (allowing a court to deem uncontested facts admitted); Def.'s SOF, Dkt. 195, at ¶ 39 ("Gary Naham does not deny marijuana was found in his apartment"); Pl.'s Resp., Dkt. 203, at 23 ("Plaintiff concedes item 39"). In fact, Naham explicitly disclaims that he has ever accused anyone of planting marijuana in his home. *See* Naham Depo., Dkt. 192-J, at 243:5–18.

Because marijuana was found in Naham's home on the evening of January 24, 2006, the officers had probable cause to believe that a crime had been committed in their presence, and Naham had no Fourth Amendment right not to be arrested that evening. The defendants are therefore entitled to summary judgment on Naham's False Arrest claim in Count IV.

### III. Due Process Claim (Count II)

In Count II of the Complaint, Naham alleges that the named Chicago Police officers "deprived [him] of fair criminal proceedings by engaging in multiple wrongful acts." Compl., Dkt. 1, at ¶ 27. Specifically, Naham alleges that the officers concealed or destroyed known exculpatory evidence, planted false inculpatory evidence in his home, and submitted knowingly false statements when applying for the search warrant. *Id.*; Pl.'s Resp., Dkt. 203, at 9. The Court addresses each allegation in turn.

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant's right to a fair trial. Due process requires prosecutors to tender evidence to a criminal defendant before trial when that evidence tends to be exculpatory and is material to guilt or to punishment.

*Brady v. Maryland*, 373 U.S. 83, 87 (1963). When police misconduct results in *Brady* violations, defendants deprived of their due process rights may pursue § 1983 claims against police officers. *See Newsome v. McCabe*, 256 F.3d 747, 751–52 (7th Cir. 2001).

However, no *Brady* violation can occur if the accused is never actually prosecuted at trial. *See Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011) (holding that a plaintiff could not pursue *Brady* claims under § 1983 when criminal charges were dropped before trial); *Garcia v. City of Chicago*, 24 F.3d 966, 971 (7th Cir. 1994) (holding that no *Brady* violation occurs when a prosecutor moves for *nolle prosequi*). After all, *Brady* only requires that a criminal defendant receive material exculpatory evidence with sufficient time to fairly use that evidence at trial. *See, e.g.*, *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014). In other words, even if a prosecutor withholds exculpatory evidence from a person accused of crimes, no *Brady* violation occurs until and unless the accused is subjected to an unfair trial.

For these reasons, Naham's "exculpatory evidence" allegation fails to give rise to a claim under the Due Process Clause.[4] The criminal charges against Naham were dismissed *nolle prosequi* before trial, so Naham was never subjected to an unfair trial in which he would have been deprived of *Brady* evidence. Therefore, Naham's exculpatory evidence allegation falls outside the scope of what may be included in a § 1983 Due Process claim. *Ray*, 629 F.3d at 664.

For similar reasons, Naham's allegations that the defendants planted false inculpatory evidence (*e.g.,* the methamphetamine allegedly found in his apartment during the search) cannot be brought under the Due Process Clause, either, because the evidence was never used at a criminal trial. Fabrication of false evidence does not cause an "injury" recognized by the Due

---

[4] It is difficult to decipher from Naham's brief precisely what "exculpatory" evidence he alleges to have been concealed, but he appears to claim at least that the other warrant affidavits submitted by Haljean and the absence of a file pertaining to the confidential informant are included in that category. *See* Pl.'s Mem. at 13, 15.

Process Clause until that evidence is used at trial. *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012); *see also Buckley v. Fitzsimmons*, 20 F.3d 789, 795 (7th Cir. 1994) (holding that improperly coerced witness statements would not give an alleged coconspirator a constitutional claim unless actually introduced in a prosecution). As with Naham's exculpatory evidence claim, Naham's inculpatory evidence claim fails because he was never subjected to a trial.

To the extent that Naham is asserting a deprivation of constitutional rights relating to his pre-trial liberty interests, those claims are analyzed not under the Due Process Clause but rather under the Fourth Amendment and the state law of malicious prosecution. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (rejecting the use of substantive due process to impose additional requirements beyond those of the Fourth Amendment alone) (plurality opinion); *id.* at 285 (rejecting the use of § 1983 and the Due Process Clause when a state-law malicious prosecution cause of action is sufficient to remedy any injury) (Kennedy, J., concurring); *Serino v. Hensley,* 735 F.3d 588, 593–94 (7th Cir. 2013) (constitutional claims relating to pretrial deprivations of liberty must be analyzed under the appropriate constitutional amendment, not due process generally).[5] The Fourth Amendment protects against the use of false evidence to secure a search warrant, *see Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), and the use of false evidence to justify an arrest without probable cause, *see Alexander v. McKinney*, 692 F.3d 553, 558 (7th Cir. 2012). Illinois malicious prosecution law protects against the filing of knowingly false reports or

---

[5] As noted in *Serino,* Chief Justice Rehnquist's four-justice plurality opinion and Justice Kennedy's two-justice concurrence in *Albright* stand for the proposition that the Due Process Clause does not provide a basis to bring claims against an officer whose wrongful conduct leads to false arrest or prosecution without probable cause. 735 F.3d at 593 (synthesizing the Rehnquist and Kennedy opinions in *Albright*); *see also Marks v. United States*, 430 U.S. 188, 193 (1977) ("[T]he holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (citation omitted).

other false evidence that result in unwarranted criminal prosecution. *See Allen v. Berger*, 336 Ill. App. 3d 675, 678, 784 N.E.2d 367, 370 (Ill. App. 2002).

All of Naham's accusations against the defendant officers fall into claims properly analyzed under the Fourth Amendment or under malicious prosecution, not under the Due Process Clause. Naham's allegations of false affidavits, fictitious confidential informants, and tampered police records speak to the validity of the search warrant, which is an issue under the Fourth Amendment. The allegations concerning the manner of execution of the search warrant—the lack of a knock notice, the alleged assault, the unnecessary and malicious destruction of property, and the theft of cash—also raise only Fourth Amendment issues of unreasonable search or seizure, not any substantive due process issues. The allegations of falsely planted contraband are relevant to Naham's Fourth Amendment false arrest claim[6] and state law malicious prosecution claim against the officers. The Due Process Clause does not provide a basis for asserting these claims; Naham may only assert those claims under the standards prescribed by the Fourth Amendment and the state law of malicious prosecution. Therefore, Naham's due process claim fails as a matter of law, and the defendants are entitled to summary judgment on Count II.

## IV. § 1983 Conspiracy Claim (Count III)

In Count III, Naham alleges that the individual defendants "either explicitly or implicitly conspired and agreed on a scheme to deprive the Plaintiff of fair criminal proceedings" by "concealing the exculpatory evidence that should have been made available to plaintiff, false warrants and police reports, and false criminal complaints, all of which was done to cover up wrongdoing." Compl., Dkt. 1, at ¶ 30. The complaint goes on to allege that these actions were

---

[6] As discussed above, the Court decides the false arrest claim on other grounds. *See supra* Part II.

"in violation of Plaintiff's due process rights." *Id.* ¶ 31.The defendants also move for summary judgment on the conspiracy claim, asserting that the claim fails as a matter of law because Naham's due process claim fails as a matter of law.

The Court agrees. Naham's claim that the defendants conspired to violate his due process rights fails for precisely the reason that his due process claim fails: the acts that he alleges the defendants to have conspired to commit did not give rise to a due process violation; therefore, he cannot state a claim for conspiracy to commit a due process violation. "[C]onspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2009). Where no constitutional violation has been proven, there can be no liability for conspiracy under § 1983. *See, e.g., Bublitz v. Cottey*, 327 F.3d 485, 488 n.3 (7th Cir. 2003) (rejecting plaintiffs' conspiracy claims because they failed to establish a substantive constitutional violation); *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) ("The jury's conclusion that the Cefalus suffered no constitutional injury thus forecloses relief on the conspiracy claim."). The defendants are therefore entitled to summary judgment on Count III's conspiracy claim as well.

\*    \*    \*

For the reasons set forth above, the defendants' motion for partial summary judgment is granted in full. Summary judgment is granted as to all defendants on Counts II, III, IV, and V.

Dated: January 15, 2015

John J. Tharp, Jr.
United States District Judge